THE STATE OF OHIO, APPELLEE, *v.* BRADLEY, APPELLANT.

(No. 50220 — Decided February 24, 1986.)

*John T. Corrigan,* prosecuting attorney, and *Mark A. Sullivan,* for appellee.

*Thomas W. Connors,* for appellant.

PATTON, J. This is an appeal from a judgment of the Cuyahoga County Court of Common Pleas finding defendant-appellant, Carlos Bradley, guilty of felonious assault with a gun specification.

On December 18, 1984, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11, with a gun specification. At his arraignment on January 11, 1985, appellant entered a plea of not guilty.

A jury trial commenced on March 27, 1985. On March 29, 1985, the jury returned its verdict finding appellant guilty of felonious assault and the gun specification.

At trial the government called three witnesses, Zena Bradley, Gus Bey (the victim), and Tana Marie Moore (Zena Bradley's three-year-old daughter).

Zena Bradley was the estranged wife of appellant. The record reveals that trial defense counsel did not object to her competency to testify against her husband.

At approximately 1 a.m. on October 25, 1984, the victim, Gus Bey, Zena Bradley and her three-year-old daughter drove to the residence of Jeanine Goldsby. Zena Bradley intended to retrieve her car from her estranged husband, Carlos Bradley, appellant herein. Ms. Bradley testified that appellant had stolen her car two months previously, which theft she had reported to the police. The record reveals that Jeanine Goldsby was appellant's girlfriend at the time.

As Ms. Bradley approached her car, another vehicle arrived on the scene with at least five individuals, one of whom was Ms. Bradley's husband, appellant. Ms. Bradley was approached by Brenda Goldsby, who ordered her away from the property and struck her on the jaw. Jeanine Goldsby jumped on Ms. Bradley while another woman joined the fracas. Gus Bey exited his car to break up the fighting. As he attempted to go back to his car, Bey was struck from behind with a baseball bat. Another male, Richard Stewart, stabbed Bey behind the left ear. As Bey continued to try to reach his car, Bey heard three shots fired. He testified that he did not feel the impact of the bullet, but realized his face was swelling up and he was bleeding. Bey stated that he had seen the appellant cock a small gun.

Ms. Bradley also testified that she saw appellant with a gun. She was sitting in the passenger's seat of Bey's car at the time with her daughter beside her. Ms. Bradley stated that appellant shot Bey when they were both on the driver's side of Bey's car. According to Ms. Bradley, appellant and the victim were a few feet apart when appellant shot Bey in the jaw. After Bey was shot, he drove to the police station. He was then conveyed to the hospital.

The court conducted a voir dire examination of three-year-old Tana Moore prior to finding her competent to testify. The court limited the parties' interrogation of Tana to what she saw.

On direct examination, Tana testified that "Nini" (Jeanine Goldsby) got a gun out of her purse and gave it to appellant. Appellant then shot Gus in the face. Tana was in the car at the time.

On cross-examination, Tana stated that she was down on the floor of the car when shots were fired. She testified that she did not see any shooting.

Trial defense counsel called six witnesses on appellant's behalf, including the appellant. Appellant denied shooting anyone or having a gun in his possession. Appellant claimed that Gus Bey was the aggressor in the fighting which occurred. He testified that no one in his group including himself jumped or attacked Gus Bey. Appellant stated that Gus Bey pursued him and when the shots rang out, appellant ran.

Richard Stewart was called as a defense witness. He stated that he tried to break up the fight between Zena Bradley and Brenda Goldsby. He testified that Gus Bey became involved in the fighting at this point and was hitting everyone. Stewart stated that the appellant did not get involved in the fighting. He testified that he could not see if appellant had a gun.

Jeanine Goldsby, Brenda Goldsby and Darnella Atkinson were all present at the scene of the shooting. Jeanine Goldsby stated that no one in her party including appellant had a gun. She denied giving appellant a gun and denied seeing any weapon. Jeanine Goldsby testified that she had heard shots after Zena Bradley had gone into the car and then exited from the car.

Brenda Goldsby testified that she saw Zena Bradley go into the car and get a gun. She saw Zena push her daughter down into the car and then heard the shots. Brenda reported that

she called the police and told them that Zena Bradley fired a gun.

Darnella Atkinson stated that she saw Zena Bradley run to the car after the fight was broken up between Zena and Brenda Goldsby. She heard Zena state: "I'm going to kill all of you, * * *" and that is when she heard the gunshots. Ms. Atkinson testified that she did not see appellant with a gun.

Trial defense counsel called Frank Hughes as a character witness on appellant's behalf. Hughes stated that appellant had lived with him and worked for him. Appellant is presently working for him at one of his gas stations. Hughes described appellant as trustworthy, nice and even-tempered. He denied having any difficulties with appellant and considered him like a son.

After the defense rested, the government called Otis Howard as a rebuttal witness. Officer Howard was one of the two policemen who responded to a call of "male shot, family trouble" at the Goldsby home. He testified that two sisters who lived at the same address told him that appellant did the shooting. The women never stated that Zena Bradley had a gun or that she did the firing.

Officer Howard also spoke with the victim, Gus Bey. According to Officer Howard, Gus Bey described appellant as the one with the gun.

After the jury returned its verdict of guilty, appellant filed a timely notice of appeal. He assigned two errors on his appeal:

"* * * ■

"2. Whether the trial judge erred in admitting testimony by appellant's wife of acts done by appellant in the presence of only his wife."

* * *

## II

Appellant contends that the trial court erred in admitting Zena Bradley's testimony that appellant drank a lot, liked to fight, had a bad temper, and physically abused her. This contention does not have merit.

The record reveals that appellant objected to the above-stated testimony on the basis that Zena Bradley, appellant's wife, "was talking in terms of acts and words that took place between husband and wife, not in the hearing or presence of a third party." On appeal, appellant contends that this information was covered by matrimonial privilege as codified in R.C. 2317.02. R.C. 2317.02 forbids the testimony of a wife against her husband regarding acts done by him solely in her presence.

Appellant's privilege to prevent testimony by his spouse is determined by Evid. R. 501:

"The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience."

This rule retains statutory control over privileges, subject to judicial interpretation "in the light of reason and experience."

Contrary to appellant's assertion that R.C. 2317.02 is applicable to the instant case, this court has held that R.C. 2945.42 contains the spousal communication privilege for criminal cases. *State* v. *Canitia* (Jan 19, 1984), Cuyahoga App. No. 46946, unreported. But, cf., *State* v. *Bristow* (Aug. 6, 1981), Cuyahoga App. No. 42576, unreported (Pryatel, J., concurring). In *State* v. *Mowery* (1982), 1 Ohio St. 3d 192, 197, 1 OBR 219, 224, 438 N.E. 2d 897, 901, the Ohio Supreme Court stated that the following portion of R.C. 2945.42 (since amended by Am. Sub. H.B. No. 475 [141 Ohio Laws ____]) pertains to privilege:

"Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in

the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in case of personal injury by either the husband or wife to the other, or bigamy, or failure to provide for, or neglect or cruelty of either to their children under eighteen years of age or their physically or mentally handicapped child under twenty-one years of age, or neglect or abandonment of such spouse under such sections. The presence or whereabouts of the husband or wife is not an act under this section. * * *"

In *State* v. *Canitia, supra,* this court followed the holding of the Ohio Supreme Court in *McEntire* v. *McEntire* (1923), 107 Ohio St. 510, 140 N.E. 328. This court held, as did the court in *McEntire,* that the spousal privilege for confidential communications does not apply when the spouses are separated and not living as husband and wife. *State* v. *Canitia, supra,* at 16-17.

In *Mowery, supra,* the court stated that the purpose behind the spousal privilege is to promote and preserve marital harmony. Where evidence shows that incidents of coverture have been relinquished, no legitimate purpose would be served by the exclusion of spousal testimony. See *State* v. *Bristow, supra* (Pryatel, J., concurring). Although *Canitia, supra,* and *McEntire, supra,* held that a spousal privilege to *confidential communications* does not apply to couples who are separated, the policy rationale behind the inapplication of the privilege to separated couples applies as well to acts done solely in the presence of the spouse as in the instant case.

While the achievement of marital peace and harmony is a laudable goal, it is unrealistic to believe it is an attainable goal under the situation presented herein. The record reveals that Zena Bradley and appellant had separate residences. Both were pursuing other relationships. Jeanine Goldsby stated that she had been appellant's girlfriend for approximately the last ten months.

Notwithstanding this court's determination that the spousal privilege is not applicable to the instant case, the record is silent regarding whether these acts were done in the presence of a third person. Where the record is silent as to the presence of a third person, there is a presumption of admissibility of the spousal testimony. See *F. A. Requarth Co.* v. *Holland* (1946), 78 Ohio App. 493, 34 O.O. 231, 66 N.E. 2d 329.

Accordingly, the trial court did not err in admitting Zena Bradley's testimony that appellant drank a lot, liked to fight, had a bad temper, and physically abused her. Appellant's second assignment is overruled.

*Judgment affirmed.*

CORRIGAN, J., concurs.

MARKUS, P.J., concurs in judgment only.