**VILLAGE OF BENTLEYVILLE, Appellant,**

v.

**PISANI, Appellee.**

[Cite as *Bentleyville v. Pisani* (1995), 100 Ohio App.3d 515.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 66434, 66435, 66436, 66437 and 66438.

Decided Jan. 30, 1995.

516

Joseph W. Diemert, Jr., and Thomas M. Hanculak, for appellant.

Michael Terrence Conway & Assoc., and Michael Terrence Conway, for appellee.

PATRICIA A. BLACKMON, Judge.

The village of Bentleyville, plaintiff-appellant, appeals the decision of the trial court dismissing its complaint for telephone harassment against Carol A. Pisani, defendant-appellee. Bentleyville assigns the following error for our review:

"The trial court erred by dismissing the case against defendant since the act charged against defendant is not privileged pursuant to Ohio Revised Code Section 2317.02(D)."

Carol Pisani assigns the following cross-assignment of error for our review:

"The state of Ohio, Chagrin Falls, and the Cuyahoga County Domestic Relations Court have tried appellee for the same conduct twice, once with an acquittal and once for a finding of contempt subject to incarceration and fines; therefore the said prosecution would require placing the appellee once in jeopardy in violation of the Fifth Amendment to the United States Constitution."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we reverse the decision of the trial court. The apposite facts follow.

Glenn T. Pisani signed an affidavit alleging his estranged wife, Carol A. Pisani, made telephone calls, from January 28, 1993 through March 7, 1993, to him with "purpose to abuse, threaten, annoy, or harass him" in violation of R.C. 2917.21(B). A criminal complaint was thereafter filed with the Bedford Municipal Court.

Defense counsel moved for dismissal on the grounds that the communication in the telephone conversations was privileged. Carol and Glenn Pisani were separated and in the process of a divorce when the telephone calls were made. No third parties were present to hear the telephone conversations. Based upon these limited facts, the trial court granted the motion and dismissed the case.

Bentleyville's sole assignment of error on appeal raises two issues. They are: whether the communication between Carol and Glenn Pisani was privileged, and whether the charge of telephone harassment is an exception to the rule. R.C. 2945.42, not R.C. 2317.02, contains the spousal communication privilege for criminal cases. *State v. Bradley* (1986), 30 Ohio App.3d 181, 183, 30 OBR 323, 325, 507 N.E.2d 396, 398. See, also, *State v. Canitia* (Jan. 19, 1984), Cuyahoga App. No. 46946, unreported, 1984 WL 14176. It provides as follows:

"Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in case of personal injury by either the husband or wife to the other, or rape or felonious sexual penetration in a case in which the offense can be committed against a spouse, or bigamy, or failure to provide for, neglect of, or cruelty to their children under eighteen years of age or their physically or mentally handicapped child under twenty-one years of age, violation of a protection order or consent agreement, or neglect or abandonment or such spouse under such sections. The presence or whereabouts of the husband or wife is not an act under this section."

Coverture has been defined as "[t]he condition or state of a married woman." Black's Law Dictionary (6 Ed.1990) 366. Coverture originates from the antiquated principles that husband and wife are one in the person of the man, and the woman's legal existence is suspended during marriage. See *State v. Mowery* (1982), 1 Ohio St.3d 192, 193–194, 1 OBR 219, 221–222, 438 N.E.2d 897, 898–899. "Today, however, many of these archaic principles have been superseded by more modern logical concepts. Women are no longer considered chattels and have through various movements in history attempted to gain equality with men. The goal of equality has by no means been achieved; however, hopefully by the constant application of logic by rational thinking individuals these medieval anachronisms will be totally surmounted." *Id.* at 194, 1 OBR at 221, 438 N.E.2d at 899. Coverture suggests a man and a woman are married under the law, whether by license or common law, and cohabitating as such. Under more modern logical concepts, a fitting definition for coverture is the condition or state of a married person, whether man or woman.

■ R.C. 2945.42 specifically states that privileged communications between spouses take place "during coverture." Furthermore, this court held "the spousal privilege for confidential communications does not apply when the spouses are separated and not living as husband and wife." *Bradley,* 30 Ohio App.3d at 184, 30 OBR at 326, 507 N.E.2d at 398–399, citing *Canitia* at 16–17. "Where evidence shows that incidents of coverture have been relinquished, no legitimate purpose would be served by the exclusion of spousal testimony." *Bradley* at 184, 30 OBR at 326, 507 N.E.2d at 399. Absent coverture, a communication between spouses is not privileged.

Even if coverture were not required when the communication was made, the lack of coverture defeats the purpose of the spousal privilege. The purpose of the spousal privilege is to "promote marital peace." *Mowery,* 1 Ohio St.3d at 198, 1 OBR at 225, 438 N.E.2d at 902, citing *State v. Antill* (1964), 176 Ohio St. 61, 64, 26 O.O.2d 366, 368, 197 N.E.2d 548, 551 (privilege is lacking where a person is tried for assaulting his spouse). The promotion of marital peace cannot be achieved when the spouses are separated, no longer living together in coverture, and awaiting the outcome of a divorce. In *Mowery,* the Supreme Court of Ohio adopted a balancing test to determine "whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice." *Id.* at 199, 1 OBR at 226, 438 N.E.2d at 903, citing *Trammel v. United States* (1980), 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186.

From the limited facts in the record *sub judice,* it is clear Carol and Glenn Pisani were married, but separated and living apart with divorce proceedings pending. Because they were not living in coverture at the time of the telephone harassment, the spousal privilege does not apply.[1] Under the balancing test, the goal of promoting marital peace is no longer compelling where Carol and Glenn Pisani were living apart, awaiting a conclusion to divorce proceedings, and one of them is allegedly making harassing phone calls. Accordingly, the spousal privilege under R.C. 2945.42 does not apply in this case, and the motion to dismiss should have been denied.

■ In her cross-assignment of error, Carol Pisani argues for the first time in this case that double jeopardy bars this prosecution. We decline to address this error because it is not ripe for appellate review. A claim is not ripe for appellate review unless the trial court has arrived at a definitive position on the

---

1. This court does not intend to suggest the charge of telephone harassment requires any form of communication to take place. The act of making a telephone call itself is actionable under R.C. 2917.21(B). The evidence supporting the "purpose to abuse, threaten, annoy, or harrass" under R.C. 2917.21(B) is another matter.

issue. Accord *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 14–15, 526 N.E.2d 1350, 1352–1354. In the case *sub judice,* the constitutional question of double jeopardy is merely a potential controversy. Double jeopardy was not raised as a defense in the trial court, nor was it considered by the trial court.

To review any claim not raised in the trial court nor supported by the record would be premature, and would amount to nothing more than an advisory opinion. Claims raised for the first time on appeal are not justiciable because appellate courts do not engage in advisory opinions. *Egan v. Natl. Distillers & Chemical Corp.* (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904. See, also, *Frank v. Vulcan Materials Co.* (1988), 55 Ohio App.3d 153, 563 N.E.2d 339 (appellate courts are restrained from making premature declarations upon merely potential controversies). Accordingly, Carol Pisani's cross-assignment of error has no merit.

The judgment is reversed and the cause is remanded.

*Judgment reversed
and cause remanded.*

SPELLACY, P.J., and PORTER, J., concur.