Defendants Scott Shoffner and Larry Shoffner appeal the judgment and sentence of the Court of Common Pleas of Shelby County, from a jury verdict finding each guilty of one count of Breaking and Entering in violation of R.C. 2911.13.
On February 12, 1998, Larry and Scott Shoffner were each indicted by the Shelby County Grand Jury, for one count of Breaking and Entering a building owned by Robert Hughes[1] "on or about November 4, 1997," and for one count of Burglary of the residence of Harry Hageman on or about November 12, 1997. The cases were consolidated and scheduled for trial on June 22, 1998.
The jury returned guilty verdicts for both defendants as to the breaking and entering of the Hughes building, but was unable to reach verdicts as to the second count of the indictment, the burglary of the Hageman residence. The trial court sentenced both defendants to community control sanctions in accordance with R.C. 2929.11. The defendants now appeal jointly to this court, asserting three assignments of error with the proceedings below.
 [The a]ppellants were denied due process of law and the right to a fair trial due to the misconduct of the assistant prosecuting attorney.
 The trial court erred to the substantial prejudice of the appellants by permitting the prosecution to amend the indictment and thereafter by denying appellants request [sic] for a continuance to further prepare for trial.
 The trial court erred to the substantial prejudice of the appellants by failing to instruct the jury (on the burglary charge) on the lesser included offense of receiving stolen property.
Defendants' first assignment of error argues that misconduct by the prosecuting attorney prejudiced the defendant. We begin by observing that "[i]n general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." State v. Maurer (1984), 15 Ohio St.3d 239, 266. Here, defendants specifically allege that the cumulative effect of the prosecutor's multiple instances of alleged misconduct deprived them of a fair trial. See, e.g. State v. DeMarco
(1987), 31 Ohio St.3d 191. Defendants complain that the prosecutor withheld evidence, attempted to introduce prejudicial evidence that had been excluded by the trial court, repeatedly used leading questions to elicit hearsay into the record, and made a factual "misstatement" to the trial court.
Defendants first assert that the prosecutor's failure to provide the defense with a written summary of a conversation with a codefendant who testified on behalf of the State violated both the doctrine of Brady v. Maryland (1963),373 U.S. 83 as well as Crim.R. 16(B)(1)(a)(ii). Defendants argue that the prosecutor was obliged to provide them a summary of the conversation he had with witness Jason Scholl on the Saturday prior to trial, because the statements Scholl made during that conversation contradicted prior statements he had made to law enforcement. The record indicates that up to that point, Mr. Scholl had steadfastly maintained that he was not involved with either the breaking and entering of the Hughes building or the burglary of the Hageman residence. However, in his statement made to the prosecutor the Saturday before trial, he admitted that he had been involved and that in fact the breaking and entering of the Hughes building had been his idea. Although the defendants were not informed by the prosecutor of this change in Mr. Scholl's story, his testimony at trial reflected his new story.
After Mr. Scholl's direct testimony, the defendants argued that the mere fact that Mr. Scholl made conflicting statements is in itself sufficient to make those statements both exculpatory and material under the Brady rule.
 [T]he suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
Brady v. Maryland, 373 U.S. at 87. Additionally, the defendants argued that even if the statement was not required to be disclosed under Brady that the prosecutor was required to disclose it pursuant to Crim.R. 16(B)(1)(a)(ii), which requires disclosure of "[w]ritten summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer." Crim.R. 16(B)(1)(a)(ii).
However, we believe it is unnecessary for us to decide whether either Brady or the criminal rules compelled the prosecutor to provide a written summary of his conversation with Mr. Scholl to the defendants. At least one remedy for this situation would have been for the defendants to request that the judge hold an in camera hearing to inspect Mr. Scholl's final statement to ensure that it comported with the testimony he gave at trial. See Crim.R. 16(B)(1)(g). Such a hearing was never requested.
Moreover, defendants' attorney fully cross-examined Mr. Scholl, and specifically addressed the contradictions between the two stories he gave to law enforcement and to the prosecutor. The only possible benefit that the defendants could have received by being provided a summary of his new statement would have been to attack Mr. Scholl's credibility. However, the record clearly reflects that the defense counsel was able to undermine Mr. Scholl's credibility even without the benefit of a written summary of the statement, based upon the inconsistencies between Mr. Scholl's earlier statements and his testimony at trial, as well as his plea bargain. Any error committed by failure to provide the defendants with a written summary of Mr. Scholl's statement was therefore harmless beyond a reasonable doubt. See State v. Scudder (1994), 71 Ohio St.3d 263,269-70.
Defendants next argue that the prosecutor attempted to introduce evidence of "other acts" that had previously been excluded by the trial court. However, the only evidence that actually made it into the record was a brief reference to a planned robbery that never occurred:
 Q: Now, Mr. Scholl, why don't you tell me about how that — how that came about.
 A: That one come about — it was on or about November 12th, somewhere around in there, and [defendant] Larry [Shoffner] was at home one morning listening to the scanner and he hear it come across where —
 MR. ZIMMERMAN: Objection, Your Honor, what he heard [sic]. He can't testify to that. He can't testify as to what somebody else hears.
 THE COURT: That's — that's — sustained. Sustained [sic]. You cannot testify as to what someone heard.
 (CONTINUED BY MR. BERGHAUSEN) Q: What did Larry tell you that he heard?
 A: Okay. Larry told me that he heard over the scanner where a woman had had an injury and was goin' to the hospital, and he wanted to break in to her house and see what she might have.
 Q: Okay. And where was this house located?
 A: Jackson Center, Ohio.
 MR. ZIMMERMAN: Objection, Your Honor.
 THE COURT: Sustained. Counselor —
 MR. ZIMMERMAN: Move for a mistrial, Your Honor.
 THE COURT: I — I'm going —
 MR. ZIMMERMAN: Specifically —
 THE COURT: I'm gonna — I'm gonna deny the motion for mistrial and I'm gonna instruct the Jury to totally disregard this witness's statement. We're only talking about the November 12th burglary. I don't want to hear anything else, and the Jury is to totally disregard that. I'm denying your motion for a mistrial.
Immediately following this colloquy, the court conducted a hearing on the motion for mistrial outside the presence of the jury. The court sustained the objection of the defendants as to the liminal motion but denied the motion for mistrial. The judge then gave an unusually strong admonition to the jury:
 Ladies and Gentlemen of the Jury, again, I want to admonish you that you are to totally disregard any comments that this witness may have made about supposedly any other criminal activity. That is totally improper and you are not to consider it for any purpose whatsoever. You're only here to discover — to discuss the cases — the charges that are filed in this case and I do not want you to consider any other evidence to that — that does not relate to this — these two particular charges.
 So I can't admonish you strong enough to — to disregard any comments that this witness may have said. Do you understand that? And I'm ordering you to disregard those.
On appeal, the defendants do not challenge the denial of their motion for a mistrial. Instead, they argue the court's pre-trial ruling excluded the evidence and that the prosecutor's violation of that ruling constitutes misconduct. However, the trial court properly sustained defense counsel's motion and struck the evidence from the record. See, e.g.,State v. Trummer (1996), 114 Ohio App.3d 456, 463. The admonition also indicates the great efforts the court made to ensure that the excluded evidence did not prejudice the defendants. We therefore believe any error to be harmless. Seeid.
Defendants next argue that the prosecutor committed misconduct by repeatedly asking leading questions. However, as defendants themselves point out in their brief, most of the objections to the form of the prosecutor's questions were sustained by the trial court. Moreover, none of the prosecutor's leading questions caused any inadmissible evidence to be entered into the record. Defendants cannot therefore argue that they were prejudiced in any way by the prosecutor's leading questions. See, e.g., State v. Smith (1974), 39 Ohio App.2d 190,194.
Finally, the defendants argue that the prosecutor made a factual misrepresentation to the court when he claimed, in the following statement, that he had only discussed the particulars of the case with Jason Scholl on one occasion:
 In preparing for trial, not within the last 60 days and not at the time the plea bargain was made but only recently in the last week when I have discussed with Mr. Scholl — in fact it was Saturday when I discussed with him his involvement in these cases; and for the record Saturday was two days before trial when I met with him to discuss his involvement in these cases.
However, Mr. Scholl later testified that he had spoken with the prosecutor about his involvement in the crimes prior to the finalization of his plea bargain:
 Q: Jason, did I hear you say that you talked to [the prosecutor] about this case before Saturday?
 A: About this case?
 Q: Correct.
 A: No, sir.
 Q: Pardon me?
 A: No, sir.
 Q: What did you talk with him about to — to get this deal on?
 A: Prior to the plea bargain?
 Q: Yeah, you talked — he asked you whether or not you talked to him about your involvement prior to the plea deal going on.
 A: Yeah. That was — that was all the cases, not just — not just this one.
 Q: Did you talk to him about this case?
 A: Yeah.
 Q: Both cases?
 A: Yeah.
 Q: Did you — at that time, at that time? So you know what were talking about reference?
 A: Yeah, I understand what you're talking about.
 Q: Did you tell him your involvement?
 A: Yes, sir.
 Q: So that was before Saturday, was it not?
 A: Yes, sir.
 MR. ZIMMERMAN: Your Honor, I think we need a recess.
Defendants argue that the prosecutor's statement to the court is inconsistent with Mr. Scholl's later testimony that he spoke about his involvement to the prosecutor prior to his plea bargain. However, the prosecutor later explained the apparent discrepancy to the court.
 I think what Mr. Zimmerman is — the thrust of his argument is that because I spoke with Mr. Scholl in preparing this case for trial, and we can clear this up for the record now, I actually spoke to him two times. The first time is when we discussed the plea agreement. I only spoke to him for a very short period of time at that time and did not go into great detail with him about his involvement. The next time I spoke with him was Saturday before trial in which we spent a significant amount of time, an hour or more, discussing his testimony.
The trial court reached the conclusion that even if the prosecutor had discussed the case with Mr. Scholl prior to Mr. Scholl's plea agreement, that the Defendants had not been prejudiced by the prosecutor's actions. The court based this conclusion on the fact that the only discrepancy between Mr. Scholl's statements to the prosecutor and his prior statements was that Mr. Scholl inculpated himself in his later statements.
 But from the statements that I understand were turned over throughout the entire proceeding, he incriminated everyone else. He never incriminated himself. Through his testimony today he incriminated himself.
 I don't — I don't feel that in that — in that respect the Defense has been prejudiced by his — his admissions today that he was, in fact, involved. Inconsistencies, as I indicated, is [sic] something that can be taken care of through cross examination.
We agree with the trial court's decision. Even if the prosecutor was aware of Mr. Scholl's involvement prior to his plea agreement, we fail to see on these facts how defendants were prejudiced by the prosecutor's failure to disclose this fact. Accordingly, we reject defendants' argument.
As previously noted, defendants also argue that the cumulative effect of the prosecutor's errors was prejudicial.
 Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial.
State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. We cannot say that the cumulative effect of the errors presented here deprived the defendants of a fair trial. For that reason, and all of the other reasons stated above, defendants' first assignment of error is overruled.
Defendants' second assignment of error argues that the trial court abused its' discretion in failing to grant a continuance and allowing amendment of the indictment to conform to the evidence adduced at trial. Defendants argue that the prosecutor's late filing of a bill of particulars that did not conform to the indictment impaired their alibi defense, and that the trial court should have allowed them a continuance.
Count one of each of defendants' indictments charged that the Breaking and Entering of the Hughes building occurred "on or about" November 4th. Shortly after their indictment, each defendant filed a motion for a bill of particulars pursuant to Crim.R. 7(E):
 When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires.
The prosecutor failed to respond to this motion. Seven days prior to the commencement of trial, on June 15, the trial court apparently held a pre-trial conference. At that conference, defendant's counsel notified the trial court and the prosecutor that he intended to present an alibi defense. On June 17, 1998, five days prior to trial, defendants filed notice of alibi, and claimed that "at the pertinent times in question herein" both defendants were at their residence. Crim.R. 12.1, which governs the filing of notice of alibi, provides:
 Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted.
On June 22, the date scheduled for commencement of the trial, the prosecuting attorney filed a bill of particulars which alleged that the breaking and entering into the Hughes residence occurred "[b]etween October 29 — November 4, 1997. Between 12:00 a.m. — 6:00 a.m." Defendants objected to this bill and requested a continuance, arguing that they had relied upon the November 4 date in the indictment in preparing their alibi defense. The judge denied their request.
At the close of the State's case, the prosecuting attorney made motion to amend the indictment to conform to the evidence presented at trial, specifically to amend the date of the offense to October 30. The trial court permitted the amendment over the objection of the defendant.
Our analysis of this issue begins with the observation that defendants' notice of alibi, although verbally given seven days prior to trial, was not filed until five days prior to trial. This filing fails to conform with the dictates of Crim.R. 12.1, which mandates that a defendant "shall, not less than sevendays before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi." Crim.R. 12.1 (emphasis added). Subject to the interests of justice, the trial court therefore had discretion to exclude all of the defendants' alibi witnesses, including the alibi testimony of defendants themselves. See, e.g. State v. Smith (1985), 17 Ohio St.3d 98,103. Instead, the trial court permitted defendants to present all of their alibi evidence.
Defendants themselves both testified that they were at the "haunted farm" on October 30, the date that the prosecution alleged the break-in of the Hughes building occurred. Other witnesses confirmed their accounts. However, the two primary prosecution witnesses both testified that after the indictment had been handed down, the defendants contacted them and attempted to coordinate their stories with the defendants' alibi defense.
Based on the foregoing, we can see no prejudice to defendants' alibi defense. See State v. Sellards (1985),17 Ohio St.3d 169. Neither can we see any action or attitude on the part of the trial court that is so unreasonable, unconscionable, or arbitrary as to constitute an abuse of discretion. See, e.g., State v. Polick (1995), 101 Ohio App.3d 428,431. Accordingly, defendants' second assignment of error is overruled.
Finally, defendants' third assignment of error argues that the trial court abused its discretion by failing to offer a jury instruction for receiving stolen property as a lesser included offense of the burglary of the Hageman residence. Because the jury failed to reach a verdict on the burglary charge, we believe the claimed error is not ripe for our review and that defendant's argument is premature. The trial court's decision is not an actual controversy affecting the rights of the defendants. Moreover, any opinion on this issue would be advisory, since it cannot affect the result of the proceedings below.
 Appeal lies only on behalf of a party aggrieved by the final order appealed from. Appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant.
Ohio Contract Carriers Ass'n v. Public Utilities Commission
(1942), 140 Ohio St. 160, syllabus. Appellate courts cannot make premature declarations upon merely potential controversies. See, e.g., Bentleyville v. Pisani (1995),100 Ohio App.3d 515, 518-19. Defendant's third assignment of error is therefore overruled.
For the foregoing reasons, the judgment and sentence of the Common Pleas Court of Shelby County in both cases is affirmed.
Judgments affirmed.
BRYANT, P.J. and HADLEY, J., concur.
[1] After the close of the state's case and over objection of defendants, the indictment was amended to reflect that the true owner of the building was Herbert Hughes. Defendants have not appealed this amendment to the indictment.