OPINION
Defendant-Appellant, Ronald D. VanHoy (hereinafter "Appellant" or "Ronald"), appeals from his conviction and sentence on one count of telephone harassment, a violation of R.C. § 4931.31
and a misdemeanor of the third degree. Appellant prosecutes two assignments of error.
 Assignment Of Error Number One The trial court erred by admitting privileged testimony into evidence in violation of O.R.C. § 2945.42.
 Assignment Of Error Number Two The trial court erred by failing to reappoint counsel for purposes of bringing this appeal.
On September 23, 1999, Appellant's wife, Diana VanHoy (hereinafter "Diana") received numerous telephone calls from Ronald. Many of the telephone calls were "hang-ups." During one or more of the telephone conversations between Ronald and Diana, Ronald, inter alia, called Diana a number of offensive names and threatened to divulge to others that Diana had experienced sexual abuse in the past. Many of the conversations ended with Diana hanging-up on Ronald. Diana testified that she felt threatened, "degraded and a bit alarmed," and "annoyed" by the telephone conversations and hang-ups. Diana documented the numerous hang-ups and conversations by recording the same on a telephone-recording device.
On October 5, 1999 Diana filed a "Criminal Complaint" essentially alleging that Ronald, while communicating with her over a telephone, addressed her with words or language of a lewd, lascivious, or indecent character, nature, or connotation for the sole purpose of annoying her, and telephoned her repeatedly for the sole purpose of harassing her or her family, in violation of R.C. § 4331.31. The matter proceeded to a trial to the bench on December 6, 1999.
At the commencement of the trial, counsel for Ronald objected to Diana's proffered testimony in its entirety as it related to communications between Diana and Ronald, particularly the communications made by Ronald to Diana during the September 23, 1999 telephone calls. The basis for the objection was that Ronald had a spousal communication privilege pursuant to R.C. § 2945.42
that would operate to preclude Diana from testifying as to any communications made between her and Ronald during their marriage. Prior to receiving any evidence from the State of Ohio, the trial court stated:
* * *
 At this point, I'm going to permit the testimony. I certainly acknowledge your objection at this point. You can go ahead then.
 You may wish to raise your objection when we get to these various points but, at this point in time, that would be my intention in how to rule.
Transcript of Record, page 11. Counsel for Donald then lodged a continuing objection to Diana's testimony as it concerned communications between Diana and Ronald.
The only evidence offered by the prosecution was the testimony of Diana as well as the tape recordings. At the conclusion of all the testimony and submission of evidence, the trial court instructed counsel to submit a supplemental memorandum concerning the issue of spousal privilege and how it applied to the case before the bench.
On December 20, 1999 Ronald filed a "Defendant's Memorandum In Re: O.R.C. 2945.42, Privileged Spousal Testimony." Appellee apparently failed to file any memorandum concerning the issue of spousal privilege. On December 29, 1999 the trial court entered an "Order" overruling Ronald's objection to Diana's testimony on the basis of Evid.R. 601(A), R.C. § 2945.41; State v. Bryant (1998),56 Ohio App.3d 20; and State v. Shaffer (1996), 114 Ohio App.3d 97. The trial court also found Ronald guilty and set the matter for sentencing. At a sentencing hearing ultimately held on January 27, 2000 Ronald was sentenced to serve sixty (60) days at the Correctional Center of Northwest Ohio, with thirty (30) days conditionally suspended. Ronald was also fined $500.00.
We turn now to our consideration of Appellant's assignments of error.
 Assignment Of Error Number One The trial court erred by admitting privileged testimony into evidence in violation of O.R.C. § 2945.42.
Appellant argues in his first assignment of error that his wife should have been precluded from testifying as to the telephone conversations occurring on September 23, 1999. Although not an issue on appeal, we begin our analysis by briefly considering whether Diana was competent to testify against Ronald, because we believe such a discussion is somewhat instructive when considering the ultimate issue of spousal privilege.
Spousal privilege and spousal competency are distinct legal concepts that interrelate and provide two different levels of protection for communications between spouses. Therefore, in determining whether Diana could testify, Evid.R. 501 and 601 as well as R.C. § 2945.42 must be examined.
At the time of trial, Evid.R. 601[1] provided in relevant part:
Every person is competent to be a witness except:
* * *
 (B) A spouse testifying against the other spouse charged with a crime except when either of the following applies;
 (1) A crime against the testifying spouse or a child of either spouse is charged;
(2) The testifying spouse elects to testify.
(emphasis added.)
In the present case, Appellant was charged with telephoning Diana and threatening to do her bodily harm or using or addressing her with words or language of a lewd, lascivious, or indecent character, nature, or connotation for the sole purpose of annoying Diana or repeatedly telephoning her for the sole purpose of harassing or molesting Diana or her family, in violation of R.C. § 4931.31. Diana was in fact the sole complaining witness and alleged victim. Consequently, pursuant to Evid.R. 601(B)(1), Diana was competent to testify against Ronald because Ronald was charged with a crime against the testifying spouse, Diana.
We next consider whether Ronald was privileged to exclude Diana's testimony concerning confidential communications made. Spousal privilege is governed and maintained by Evid.R. 501, which provides:
 The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience.
Evid.R. 501 states that the privilege of a witness shall be governed by statute. It is settled that R.C. § 2945.42 governs issues of privilege in criminal cases whereas R.C. § 2317.02 governs issues of privilege in civil cases. See, State v. Mowery (1982),1 Ohio St.3d 192. R.C. § 2945.42 provides in relevant part:
 * * * Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in case of personal injury by either the husband or wife to the other, or rape or felonious sexual penetration in a case in which the offense can be committed against a spouse, or bigamy, or failure to provide for, or neglect or cruelty of either to their children under eighteen years of age of their physically or mentally handicapped child under twenty-one years of age, violation of a protection order or consent agreement, or neglect or abandonment of such spouse under such sections. * * *
R.C. § 2945.42 confers a substantive right upon the accused to exclude privileged spousal testimony concerning a confidential communication made or act done during coverture, unless a third person was present or one of the other specifically enumerated exceptions contained in the statute is applicable. State v.Adamson (1995), 72 Ohio St.3d 431, 650 N.E.2d 875, relyingon Rahman, 23 Ohio St.3d 146, 492 N.E.2d 401, syllabus.
We begin our consideration of the applicability of the spousal communications privilege by looking at the language of the statute itself. We note that statutes providing for privileges must be strictly construed. Weis v. Weis (1947), 147 Ohio St. 416,428-429, 72 N.E.2d 245, 252; State v. Berezoski (Dec. 17, 1986), Montgomery App. No. 9568, unreported. Testimonial privileges contravene the fundamental principal that the public "has a right to every man's evidence." Consequently, "they must be strictly construed and accepted `only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth'." State v.Mowery (1982), 1 Ohio St.3d 192, 199, 438 N.E.2d 897, 903, certiorari denied (1984), 466 U.S. 940, 104 S.Ct. 1916,80 L.Ed.2d 464, quoting Trammel v. United States (1980), 445 U.S. 40, 50,100 S.Ct. 906, 912, 63 L.Ed.2d 186.
Ronald asserts that the trial court erred in relying upon Evid.R. 601(A), State v. Bryant (1998), 56 Ohio App.3d 20, andState v. Shaffer (1996), 114 Ohio App.3d 97, to conclude that he could not assert a spousal privilege pursuant to R.C. § 2945.42. More specifically, Ronald asserts that the trial court erroneously concluded that because Ronald and Diana were living separate and apart and were in the process of achieving a divorce, the communications or acts at issue were not made or done "during coverture" and therefore were not privileged pursuant to R.C. § 2945.42. Appellee, State of Ohio, counters by asserting that the evidence before the trial court was sufficient to support a finding that the incidents of coverture had been relinquished and thus the communications were not protected. However, both Appellee and Appellant ignore a threshold and fundamental requirement when considering whether communications between spouses are protected.
Although Appellee and Appellant are both correct in that Ohio's spousal privilege statute protects "communications" between spouses "during coverture," not every "communication" is meant to be protected by the statute. The Ohio Supreme Court has clarified that the "communications" meant to be protected are "confidential communications" only. In State v. Rahman (1986), 23 Ohio St.3d 146,149, 492 N.E.2d 401, 405, the Ohio Supreme Court held:
 * * * R.C. 2945.42 confers a substantive right upon the accused to exclude privileged spousal testimony concerning a confidential communication made or act done during [marriage] * * *.
(Emphasis added.). See, also, State v. Adamson (1995), 72 Ohio St.3d 431,433, 650 N.E.2d 875, 877. That is, the marital communications privilege does not exclude all communications between husband and wife. "Several factors, including the nature of the message or the circumstances under which it was delivered, may destroy a claim that confidentiality was intended." State v. Bryant (1988),56 Ohio App.3d 20, citing McCormick, Evidence (3 Ed. Cleary Ed. 1984) 193, Section 80. See, e.g., State v. Antill (1964), 176 Ohio St. 61,197 N.E.2d 548 (holding that threats of bodily harm, being an obvious violation of marital duty, should not be privileged because when a person is tried for assaulting his spouse, the basis for the privilege, i.e., to promote marital peace, is lacking); State v.Buttrom (Dec. 11, 1998), Hamilton App. No. C-970406, unreported (Ohio's spousal privilege statute contains an exception for cases involving personal injury between spouses; it does not limit that exception to cases where the defendant spouse is charged with the offense against the testifying spouse).
Turning now to the communications at issue in the case subjudice, we hold that the numerous telephone calls that resulted only in hang-ups and not in conversation were clearly not in the nature of "confidential communications" within the purpose of the law. Nor is such conduct a "confidential act" within the purpose of the marital privilege law.
The telephone calls that did result in conversations between Diana and Ronald included, inter alia, Ronald calling Diana a "slut" and a "son-of-a-bitch," Ronald telling Diana to "go back to f****** [her] family," Ronald instructing Diana "not to f*** with him," Ronald referring to Diana "f****** her dad" and "licking the penises of her brothers and [her] father," and Ronald suggesting that Diana "would get [her] head knocked off," and Ronald threatening to divulge to others that Diana had been sexually abused in the past.
The traditional justification for the marital communications privilege is that it promotes marital peace, State v. Mowery
(1982), 1 Ohio St.3d 192, 198, 438 N.E.2d 897, 902, and this Court is certainly aware that strong public policy grounds favor promotion and preservation of marital confidences even if truthful and invaluable testimony is certain cases is excluded. However, the marital privilege is intended only to protect those communications that are made in reliance upon the special trust and confidence placed in the marital relationship. The privilege is not designed to forbid inquiry into the personal wrongs committed by one spouse against the other, or intended to label confidential a communication aimed at destroying the marriage relationship. It follows then that when a case involves a crime by on spouse against the other, as here, there is no marital peace to protect, and it is clear that the communications are not intended to be kept confidential, the offending spouse should be precluded from asserting the privilege. That is, the basis for the privilege is lacking where a person is tried for a crime against his or her spouse. Communications appurtenant to the crime against the testifying spouse, particularly when the communications are an essential element of the crime charged, are certainly not the character of "confidential communications" that are intended to be protected by the marital privilege.
In the present case, we think it evident that the communications between Ronald and Diana were driven by Ronald's own psychological motivations rather than by any confidence induced by the marital relationship. The communications were not motivated by a reliance upon the intimate and special trust and confidence placed in the martial relationship, rather, the communications appear calculated to further injure the marital relationship and undermine whatever trust and confidence may have remained. There is clearly no marital harmony to preserve and no intent to keep the communications confidential. Applying the privilege in this case is "more likely to frustrate justice than foster family peace." Trammel v. United States (1980),445 U.S. 40, 52, 100 S.Ct. 906, 913. Accordingly, we hold the telephone conversations between Ronald and Diana are not in the nature of "confidential communications" between spouses that are intended to be protected by the statute.
We reiterate that only those communications passing from one marriage partner to the other because of the confidence resulting from their intimate marriage relationship receive protection. If what is said or done by either spouse has no relation to their mutual trust and confidence as husband and wife, then the reason for secrecy ceases. Were we to conclude that the marital privilege could be asserted on the facts presented by this case, a spouse in Diana's position would be left without a remedy. That is, we believe an injured spouse is permitted to testify in order that he or she will not be exposed to personal injury without having a remedy, particularly when the crime alleged is committed against the testifying spouse. Spouses in Ronald's position should not be permitted to hide behind a martial privilege when the crime alleged was committed against the defendant's spouse and there is no martial harmony to be preserved.
In conclusion, we hold that the numerous "hang-ups," insults, lewd, indecent and lascivious comments, and veiled threats communicated by Ronald to Diana were not "confidential communications" or "acts" within the purpose of the marital communications privilege. Diana VanHoy was a competent witness pursuant to Evid.R. 601(B), and Ronald was correctly prevented from asserting the privilege set forth in R.C. § 2945.42 to preclude her testimony.
We note that were we to conclude that the communications between Ronald and Diana were in fact "marital communications" as contemplated by the privilege, we would still conclude that the communications were not protected because they were not made "during coverture."
The term "coverture" refers to the condition or state of a married woman.[2] See, State v. Wilson (March 23, 1994), Darke App. No. C.C. 1318, unreported, citing Black's Law Dictionary (5 Ed. 1979) 330. We recognize that such a definition however is archaic and has fortunately been superseded by more logical concepts. Consequently, as recognized by the Eighth District Court of Appeals, "[u]nder more modern logical concepts, a fitting definition for coverture is the condition or state of a married person, whether man or woman." Bentleyville v. Pisani
(1995), 100 Ohio App.3d 515, 517.
Appellee cites this Court to a line of cases that seemingly stand for the proposition that when spouses are separated and have filed for divorce, they are per se no longer living in coverture. See, e.g., State v. Shaffer (1996), 114 Ohio App.3d 97 (Parties had been separated and living apart at time of conversations);State v. Bradley (1986), 30 Ohio App.3d 181 (Privilege does not apply when spouses are separated and not living as husband and wife); Bentleyville v. Pisani (1995), 100 Ohio App.3d 515, 517
(Spouses were separated and living apart with divorce proceedings pending); State v. Mahoney (May 16, 1991), Cuyahoga App. No. 58513, unreported (Privilege does not apply when spouses have been separated and living apart for last 2 or 3 years); State v.Sandella (Dec. 30, 1993), Ashtabula App. No. 91-A-1677, unreported (Privilege does not apply when spouses have been separated and living apart for approximately 6 months). The trial court relied upon this line of cases at least in part when deciding that Ronald could not assert the privilege. See, Order (Dec. 29, 1999).
All of the cases upon which Appellee relies for this proposition originated from the Supreme Court's decision inMcEntire v. McEntire (1923), 107 Ohio St. 510. We think it important to clarify our understanding of McEntire and its progeny. In McEntire, the Ohio Supreme Court considered whether conversations regarding alimony and property division between separated spouses were privileged. In finding they were not, the court stated:
 We do not mean hereby to curtail the rule of privileged communications between husband and wife, but we do think where husband and wife have been living separate and apart for some months and enter into an oral agreement for separation and adjustment of property interests relative to maintenance, alimony and support, which is later to be reduced to writing and signed, and the husband performs his part of such agreement by conveying to the wife the property agreed upon, and she accepts and keeps the same, even though refusing to sign the agreement after being reduced to writing, and the parties continue to live separate and apart and all marital relations incident to coverture are abandoned, that under such circumstances communications between them, not in the known presence of a third person competent to be a witness, concerning said agreement of separations, alimony, and releasing of rights, are not privileged within the terms of paragraph 3, Section 11494, General Code.
(Emphasis added). McEntire, supra, at 523. Our reading ofMcEntire leads us to the conclusion that the Supreme Court did not intend to establish a rule that the separation of spouses would overcome the spousal privilege, but limited its holding to issues regarding alimony and property division. Consequently, we disagree with McEntire's progeny to the extent that those cases stand for the proposition that coverture necessarily ceases to exist when spouses have separated and filed for divorce. That is, while the fact that spouses are separated and have filed for a divorce certainly weighs in favor of concluding that coverture no longer exists, these circumstances by themselves do not necessarily require such a conclusion. An assessment of the totality of circumstances surrounding the marital relationship is required to determine if communications were indeed made between the parties during coverture.
In the present case, the parties were married on February 2, 1998. Within thirty (30) days after the marriage, the parties separated and remained separated for at least the next 1~ years. The parties maintained individual residences during the separation period. On September 23, 1999, the date of the communications, the parties were still legally separated and divorce proceedings were pending. The communications from Ronald to Diana were in the nature of insults, lewd, indecent and lascivious comments, and veiled threats, and were intended by Ronald to "hurt" Diana. We think, in light of the brief duration of the parties' cohabitation, the lengthy and sustained informal and formal separation period, that divorce proceedings were pending at the time of the communications, and the malicious intent behind the communications, that the communications were not made "during coverture."
We reiterate that our conclusion is not based solely on the fact that the parties were separated with divorce proceedings pending. Our conclusion is based on a consideration of the totality of the circumstances surrounding the relationship at the time of the alleged communications.
 Assignment Of Error Number Two The trial court erred by failing to reappoint counsel for purposes of bringing this appeal.
Richard asserts in this assignment of error that the trial court erred by failing to reappoint his trial counsel as appellate counsel. We first observe that in Appellant's Amended Notice of Appeal, Appellant states that he is appealing from the trial court's December 29, 1999 Order finding him guilty and the January 27, 2000 Judgment of Sentence. Neither of these entries indicates in any respect that a request was made to have counsel appointed for purposes of an appeal. Nor does the record show that the trial court denied a request for appointed counsel. That is, the trial court's apparent denial of Appellant's motion to reappoint counsel for purposes of an appeal was not memorialized in a judgment entry or otherwise. Consequently, the would-be appeal from the trial court's denial of Appellant's motion to appoint counsel does not arise from a judgment. Therefore, the issue of appointment of appellate counsel is not properly before this Court.
We note that Appellant attached to his brief a document entitled "Stipulation For Supplementation Of The Record," wherein the prosecutor and defense counsel averred that a request to have counsel appointed for purposes of an appeal was made by defense counsel at the sentencing hearing and the trial court, "off the record," denied the request. While we are aware that under certain circumstances the parties to an appeal may correct or modify the record on appeal by stipulating to the correction, see, App.R. 9(E), this purported stipulation is one that is not contemplated by the rule. Rather, this impermissible stipulation is an attempt to make a record to support an appeal. "Omitted from the record" as contemplated by the rule does not mean something counsel forgot to do and that was never in the record to begin with. Furthermore, Appellant was not denied counsel, was represented by counsel on appeal, his appeal was preserved, and no application was made to this Court for appointment of appellate counsel, therefore, it is difficult to see how Appellant was prejudiced by some omission of the trial court in this regard.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
HADLEY, P.J., and WALTERS, J., concur.
[1] Evid.R. 601(B) is a rule of evidence and, as such, it supersedes the conflicting portions of R.C. § 2945.42 dealing with spousal competency. See, State v. Rahman (1986), 23 Ohio St.3d 146,492 N.E.2d 401, syllabus; State v. Mowery (1982), 1 Ohio St.3d 192,193, 438 N.E.2d 897, 898.
[2] "Sir William Blackstone conveyed the tone of the wife's position as a chattel during marriage when he wrote in Volume 1 of his Commentaries on the Laws of England (1765), as page 442: `By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during marriage, or at least is incorporated and consolidated into that of the husband: under whose wing, protection, and cover, she performs everything; and I is therefore called in our law French, a feme covert * * *, or under the protection and influence of her husband, he baron or lord; and her condition during marriage is called her coverture. * * *" State v. Mowery (1982) 1 Ohio St.3d 192,193-194