OPINION
Defendant-appellant Patrick Fredrick appeals from his conviction and sentence for Domestic Violence. He contends that the trial court erred when it excluded testimony he proffered from a psychologist who, according to his proffer, would have testified that the complainant, Fredrick's estranged wife, had said that the Domestic Violence charge was fabricated. The trial court held that the complainant's statement was a privileged communication. Fredrick also contends that the trial court erred when it sustained objections to questioning, during cross-examination of the complainant, intended to elicit that she had previously made false charges of Domestic Violence against him. The trial court held that this line of questioning was irrelevant.
We conclude that the statements allegedly made by the complainant in the psychologist's presence are privileged. There is evidence in the record from which the trial court could find, as it did, that the complainant was the psychologist's patient, and, although these statements were uttered in the presence of her estranged husband, he was essential to the therapeutic purpose of the consultation, which was to repair and enhance the marital relationship between the complainant and the defendant. However, we agree with Fredrick that the trial court erred when it sustained objections to questions intended to elicit from the complainant that she had previously made false charges of Domestic Violence. This testimony would be relevant and admissible to show the bias of the witness, as well as her credibility.
Fredrick also appeals from the denial of his motion for a new trial. In view of our disposition of his appeal from his conviction and sentence, his appeal from the denial of his motion for new trial is moot, and his assignments of error addressed thereto are overruled as moot.
The judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
 I
In January, 2001, Patrick Fredrick allegedly hit his estranged wife, Mimi Fredrick, hard on the side of the head. They were married, but living separate and apart. Earlier that evening, they had gone out to dinner to talk about their relationship, after which Mimi Fredrick dropped Patrick off at his residence, and then returned to her apartment. Later that evening, Fredrick came to her apartment, and they had an argument just outside her apartment. It was during, or at the end of, this argument that Patrick Fredrick allegedly hit Mimi hard on the side of the head. Fredrick was charged with Domestic Violence.
Fredrick had been consulting Jeffrey Morgan, a psychologist, for help with depression and anxiety. When Fredrick revealed the Domestic Violence charge, Morgan suggested a joint meeting with Mimi and Patrick to develop a plan for intervention and prevention. Dr. Morgan met with the Fredricks on three separate occasions in February, 2001.
At his bench trial, Fredrick called Dr. Morgan as a witness, and sought to elicit from Dr. Morgan statements made by Ms. Fredrick in Mr. Fredrick's presence, to the effect that her accusation of Domestic Violence was fabricated. The State objected, claiming that these were privileged communications, and the trial court sustained the State's objection.
During Fredrick's cross-examination of the complaining witness, the trial court sustained an objection to a question concerning a prior accusation of Domestic Violence. The colloquy concerning that objection included the following:
 MS. SOTER [representing Fredrick]: I would like to, to show that she has engaged in a pattern of conduct charging him with Domestic Violence and that the cases have either been dismissed or they have not had any charges filed because the police have found out there was no violence.
 ACTING JUDGE: I don't want to go into that here. I want to go into this case that we have before us today.
MS. SOTER: Okay.
 ACTING JUDGE: I am not going to look at a pattern of anything. It's what happened on this point in time on January 13 or 14 in the middle of the night.
Following the bench trial, Fredrick was found guilty of Domestic Violence, and sentenced accordingly. Thereafter, he moved for a new trial, and his motion was denied. He appeals both from his conviction and sentence and from the denial of his motion for new trial.
 II
Fredrick's First Assignment of Error is as follows:
 THE COURT ERRED IN REFUSING TO PERMIT DEFENDANT-APPELLANT'S PSYCHOLOGIST TO TESTIFY REGARDING MATTERS WHICH WERE CRUCIAL TO DEFENDANT'S CASE.
The confidential relations and communications between a licensed psychologist and patient are placed upon the same basis as those between a physician and a patient under division (b) of § 2317.02 of the Revised Code. R.C. 4732.19. Fredrick argues that the trial court erred when it concluded that Ms. Fredrick's statements made in the presence of the psychologist, Dr. Jeffrey Morgan, and Fredrick, himself, were privileged communications. At trial, Fredrick pointed out that these communications were made in his presence. In the briefs, the argument centers upon whether Ms. Fredrick could be deemed to be a patient of the psychologist. Ms. Frederick attended the session at the recommendation of Dr. Morgan, who was counseling Mr. Frederick, and the purpose of the session was to assist both spouses in developing a "safeguard plan" to deal with the stresses in the marriage. Finally, Dr. Morgan testified that he made a written diagnosis of Ms. Frederick. From the evidence in the record, the trial court could have concluded, as it evidently did, that Ms. Fredrick was a patient of Dr. Morgan at the time she made the statements in question.
The question then arises whether the statements made in the presence of Ms. Frederick's estranged husband were made within the confidential relation of physician and patient. "It is generally held that when a privileged communication is overheard, whether by accident or design, by some person not a member of the privileged relation or a necessary intermediary, such person may testify as to the communication, being absolutely unaffected by the rule of privilege." 44 Ohio Jur.3d 140, Evidence and Witnesses, § 789.
In order for a spouse to claim the privilege pertaining to communications between spouses, the spouses must be living as husband and wife in order for the privilege to apply. Where the spouses, while still legally married, are separate and living apart, the spousal privilege does not apply. State v. Shaffer (1996), 114 Ohio App.3d 97, at 101;Bentleyville v. Pisani (1995), 100 Ohio App.3d 515. Thus, Mr. Fredrick and Ms. Fredrick were not within the confidential relationship of husband and wife, for purposes of determining the existence of a privileged communication, when Ms. Fredrick's statements were made.
Nevertheless, even though Mr. and Ms. Frederick were no longer in the confidential relationship of husband and wife, we conclude that Mr. Frederick's presence when she made the statements to Dr. Morgan did not destroy their privileged character. It has been said that: "* * * a third person's presence will not preclude a finding of confidentiality, hence privilege, where that person is essential to the transaction (e.g., an interpreter or nurse), * * *." Weissenberger, Ohio Evidence Treatise (2002), § 501.3, at 178. Given the nature of the therapeutic session, we conclude that Mr. Frederick was essential to its purpose. Mr. Frederick was Dr. Morgan's patient, and his presence was essential to the development of a "safeguard plan" to deal with the stresses of the marriage. In view of the purpose of the session, with both Mr. and Ms. Frederick being patients of Dr. Morgan at the time, they could both reasonably expect that their statements would be kept confidential, and the efficacy of Dr. Morgan's diagnosis, treatment and advice would have depended on his patients communicating freely, secure in the knowledge that their statements would be privileged.
Fredrick's First Assignment of Error is overruled.
 III
Mr. Fredrick's Third Assignment of Error is as follows:
 THE COURT ABUSED ITS DISCRETION IN REFUSING TO PERMIT THE DEFENDANT-APPELLANT TO PRODUCE EVIDENCE REGARDING PRIOR FALSE CHARGES OF DOMESTIC VIOLENCE MADE BY THE COMPLAINING WITNESS.
A defendant is permitted under Evid.R. 608(B) in the court's discretion, to cross-examine a victim regarding false accusations if they are clearly probative of truthfulness or untruthfulness. State v. Boggs
(1992), 63 Ohio St.3d 418, at 421. Although the decision whether to permit cross-examination of a victim regarding false accusations is left to the trial court's discretion, that discretion is not absolute. We cannot know whether Fredrick's attorney would have succeeded in her attempt to establish, in her cross-examination of Ms. Fredrick, that Ms. Fredrick had made false accusations of Domestic Violence against Mr. Fredrick in the past. We conclude, however, that the trial court abused its discretion by preventing Fredrick's attorney from pursuing this line of questioning. If it could have been shown that the complainant had made false accusations of Domestic Violence against Fredrick in the past, that would have been highly probative of her truthfulness or untruthfulness with respect to the present charge of Domestic Violence. Although the parties do not argue the point, Ms. Fredrick's prior false accusations against her husband, if shown, would also have been admissible to show her bias, prejudice, interest, or motive to misrepresent, pursuant to Evid.R. 616(A).
We conclude that the trial court abused its discretion by preventing Fredrick from cross-examining Ms. Fredrick on the subject of prior false accusations of Domestic Violence. Fredrick's Third Assignment of Error is sustained.
 IV
Fredrick's Second and Fourth Assignments of Error are as follows:
 THE COURT ERRED IN BASING ITS DECISION TO OVERRULE THE DEFENDANT-APPELLANT-APPELLANT'S MOTION FOR NEW TRIAL ON FACTS NOT IN EVIDENCE.
 THE ACTING JUDGE ERRED IN GRANTING AN ORAL EXTENSION OF TIME TO THE PROSECUTOR TO FILE A REPLY TO DEFENDANT-APPELLANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF NEW TRIAL.
Both of these assignments pertain to Fredrick's appeal from the trial court's denial of his motion for new trial. In view of our disposition of Fredrick's First and Third assignments of error, which pertain to his direct appeal from his conviction and sentence, his assignments of error pertaining to his appeal from the denial of his motion for new trial are overruled as moot.
 V
Fredrick's Third Assignment of Error having been sustained, his First Assignment of Error having been overruled, and his Second and Fourth assignments of error having been overruled as moot, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
BROGAN and HILDEBRANDT, JJ., concur.
(Hon. Lee H. Hildebrandt, Jr., of the Court of Appeals, First Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).