[Cite as *State v. Bowers*, 2016-Ohio-904.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150024<br>TRIAL NO. B-1305688 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| ADAM BOWERS, | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  March 9, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Presiding Judge.**

{¶1}  Defendant-appellant Adam Bowers appeals his convictions for rape and gross sexual imposition of a kindergarten-age girl, L.D.  Because we determine that the trial court erred only in sentencing Bowers, we sustain his sixth assignment of error and remand the matter for resentencing.  We find no merit in his remaining assignments of error, however, so we affirm the remainder of the trial court's judgment.

### *Background Facts and Procedural History*

{¶2}  During the late summer of 2013, then-eight-year-old L.D. stayed with her grandmother, Debbie, and Debbie's husband, Mike, every other weekend at their home in Newtown, Ohio, as she had done for years prior.  Mike's son, Bowers, and Bowers's then-wife, Amber, also lived with Debbie.  L.D. reported to Amber that Bowers had tried to initiate a sexual encounter with her at a Kroger grocery store.  L.D.'s report to Amber started an investigation by the Newtown police department, and the police referred L.D. to the Mayerson Center for Safe and Healthy Children at Cincinnati Children's Hospital for an interview with a social worker.

{¶3}  The social worker conducted a recorded interview with L.D. at the Mayerson Center to assess L.D.'s safety.  In the interview, L.D. initially denied that anyone had touched her inappropriately, but L.D. then began disclosing that Bowers had sexually molested her multiple times when she was five and six years old.  L.D. described in detail an occasion where Bowers had been sitting in a chair with his pants down and had forced L.D.'s hand to touch his penis.  L.D. tried to let go, but he made her hand move up and down until "gooey stuff" came out of his penis.

{¶4}   According to L.D., Bowers also forced her to watch pornography where a man and a woman were having sex, and he showed her videos of himself and his wife masturbating.  Bowers also showed L.D. a picture of his erect penis to show her "how big" it could get.  Bowers threatened to spank or discipline L.D. if she did not comply with his sexual demands, and he offered her candy if she would touch or lick his penis.

{¶5}   L.D. also described an incident where Bowers forced her head down onto his penis and put his penis in her mouth, causing her to gag and choke.  The "gooey stuff" went into her mouth, and she had to wash it out.  L.D. also described an incident in the shower where Bowers put his penis inside her vagina, which hurt her.  L.D. stated that this happened more than once.

{¶6}   After L.D.'s Mayerson Center interview, Bowers met voluntarily with a Newtown police detective to discuss L.D.'s accusations.  Bowers's interview was also recorded.   Bowers denied any sexual contact with L.D. whatsoever, but as the interview progressed and the officer revealed some of the graphic details L.D. had provided to the social worker, Bowers began to relent.  At first, Bowers indicated that L.D. had seen him watching pornography, and, on one occasion, he had been masturbating and L.D. had come up and touched his penis.  Eventually, Bowers admitted that L.D. had held his penis and been forced to masturbate him, as well as perform oral sex on him.  He also admitted that his penis tip went inside her vagina after L.D. had asked him about sex.

{¶7}   As a result of Bowers's confession and L.D.'s statement, Bowers was placed under arrest for rape.  Bowers was indicted on September 24, 2013, for two counts of rape of a child under R.C. 2907.02(A)(1)(b), and gross sexual imposition.

The two rape counts in the indictment specified that L.D. had been under the age of ten at the time of the offenses. The matter proceeded to a jury trial.

{¶8} At trial, the state presented the testimony of L.D. via Skype. L.D. described, in her nine-year-old vocabulary, how Bowers had made her perform oral sex and masturbate him, and had put his penis inside her.

{¶9} The state then presented the testimony of Bowers's ex-wife, Amber. Amber testified that she had not really spoken to Bowers since the day of his arrest, when Amber had asked him on the phone if the allegations of sexual abuse were true, and he had responded affirmatively. The main purpose of Amber's testimony was to introduce a series of letters Bowers had sent to Amber from prison. In one of the letters, Bowers stated, "I'm not necessarily blaming my dad for my actions cuz I could have NOT done it. Could have got away from Temptation, but I let it get the best of me. Because, of what I have seen, it was placed into my brain and did a dumb move. [E]ver since I have been with you, nothing has happened."

{¶10} In the letters, Bowers denied oral and vaginal penetration with L.D., but he admitted to the "porn and masturbating part." Bowers stated that he liked "coming clean" to himself and to Amber, and that he trusted her not to show the letters to anyone else. Bowers also commented on what he thought of his possible punishment for the charged offenses:

> I have a good judge and being first time in trouble with the law, I might get lucky. Either of the two things will happen. The two F1s will get dropped and get charged with just the GSI and go home and have to take sex classes and be on probation for 5 to 6 years and register

for a while. Or fight hard and get all charges dropped. I bet they will wanna stick me with at least the GSI though.

{¶11} Later on in the same letter, Bowers stated,

There's a guy in here, He had the same charge but more charges and a record. Anyways he got sentenced for 37 years. He had 8 charges, dropped all but 3. Charged him for two F1s and an F2. He got accused for raping his own 4 year old daughter. Now he had a minor record for the same thing...rape. That's why I wanted to trust you first. Cuz I don't want that to happen to me.

{¶12} In addition to Amber's and L.D.'s testimony, the state also presented the testimony of the social worker who had interviewed L.D. at the Mayerson Center, and the Newtown police detective who had interviewed Bowers. The social worker testified that her main concern when conducting L.D.'s interview was to determine L.D.'s safety, which included medical and psychological safety. The social worker also testified that a doctor examined L.D. after the interview. L.D.'s recorded interview with the social worker was played in its entirety for the jury. The Newtown police officer introduced Bowers's recorded confession, which also was played for the jury.

{¶13} Bowers testified in his own defense. He claimed that L.D. had touched his penis, but only once. When asked for more details as to this event on cross-examination, Bowers could not give any kind of timeframe, and he stated, "[s]he just came in contact with it and that was it." The prosecutor questioned Bowers: "You

5

don't remember the details of how a little girl touched your penis?" Bowers responded, "No, I don't."

{¶14} As to the letters he had written Amber from prison, Bowers testified that he had confessed to Amber because of her hostility towards him since his arrest, and that he wanted her back. When asked about why he had confessed in the interview with the Newtown police detective to raping L.D., Bowers testified that the detective had "talked him into" claiming that he had committed the offenses, and that Bowers had lied to the detective in the interview. The prosecutor asked Bowers: "You were just able to come up with a story about raping a five-year-old girl spontaneously?" Bowers responded, "I wouldn't say that I came up with a story saying that I raped somebody, but I would say everybody lies. I've lied before. I mean, anybody can just make up a simple lie." When asked again on cross-examination why he felt pressured to admit to the sexual contact after initially denying it, Bowers responded that the detective had offered to help him, "so, obviously, I felt that I was going home at the end of this, and that's all there is to it."

{¶15} The jury found Bowers guilty of rape involving oral sex and guilty of gross sexual imposition, but not guilty of vaginal rape. The trial court imposed a prison term of 25 years to life for the rape count and 36 months for the gross-sexual-imposition count, to run concurrently with the rape count. Bowers now appeals his convictions.

### Spousal Privilege

{¶16} In Bowers's first assignment of error, he argues that the trial court erred by permitting Amber to divulge privileged spousal communications to the jury. Bowers complains that the trial court should not have allowed Amber to read from

letters Bowers had written her from jail. We note that Bowers failed to object to the testimony on this basis in the trial court, so we review for plain error. *State v. Lewis*, 1st Dist. Hamilton Nos. C-050989 and C-060010, 2007-Ohio-1485, ¶ 39.

{¶17} In a criminal trial, R.C. 2945.42 provides an accused the right to exclude testimony regarding privileged spousal communications, also known as the spousal privilege. *Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 20. The right to invoke the spousal privilege belongs to the nontestifying spouse. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 112. The statute provides that a "[h]usband or wife shall not testify concerning a communication made by one to the other, * * * during coverture, unless the communication was made * * * in the known presence or hearing of a third person competent to be a witness * * *." The statute further provides that the privilege exists even "if the marital relation has ceased to exist." R.C. 2945.42.

{¶18} "Coverture" has been defined as "the condition or state of a married person, whether man or woman." *Bentleyville v. Pisani*, 100 Ohio App.3d 515, 517, 654 N.E.2d 394 (8th Dist.1995). Courts have found that "coverture" requires not only that the communication between the spouses have been made during the marriage, but also while the spouses were living together, because " '[w]here evidence shows that incidents of coverture have been relinquished, no legitimate purpose would be served by the exclusion of spousal testimony.' " *State v. Nowlin*, 5th Dist. Muskingum No. CT2012-0015, 2012-Ohio-4923, ¶ 45, quoting *Bentleyville*; *see State v. Reed*, 2014-Ohio-5463, 25 N.E.3d 480, ¶ 57 (11th Dist.).

{¶19} The letters from Bowers to Amber were sent after Bowers had gone to prison, and some were sent even after Bowers and Amber had divorced—although

7

the record is not clear which letters were sent when. The record is clear, however, that Amber sought to cut Bowers out of her life after the allegations against L.D. surfaced. Amber refused to talk to Bowers after his arrest, and she would not take his phone calls. In one of the letters, Bowers acknowledged Amber's silence, stating, "so I heard you never wanna speak to me again?" Bowers's own testimony at trial reflected that Amber had been hostile toward him after his arrest, and that he wanted to win her back in the letters. Because Amber ceased her communication with Bowers after his arrest in an effort to distance herself from him permanently, and then sought a divorce, "coverture" had been relinquished. As a result, the jailhouse letters from Bowers to Amber were not privileged spousal communications, and we overrule Bowers's first assignment of error.

### The Medical-Diagnosis or Treatment Exception

{¶20} In his second assignment of error, Bowers argues that the trial court erred by allowing the state to introduce hearsay statements made by L.D. through her Mayerson Center interview.

{¶21} Evid.R. 803(4) provides an exception to the hearsay rule for "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This court has held that statements made by a child victim to a social worker at Cincinnati Children's Hospital were admissible under Evid.R. 803(4). *See State v. Lukacs*, 188 Ohio App.3d 597, 605, 2010-Ohio-2364, 936 N.E.2d 506 (1st Dist.); *State v. Woodruff*, 1st Dist. Hamilton Nos. C-140256 and C-140257, 2015-Ohio-2422, ¶ 20-21.

{¶22} In determining whether a child's statements were made for the purpose of medical diagnosis or treatment, the *Lukacs* court noted that the inquiry "depends upon the facts of the particular case" and the factors to be examined include (1) the nature of the questioning—whether the interviewer asked leading or suggestive questions; (2) whether the child had a reason to lie; (3) whether the child understood the need to tell the truth; (4) the age of the child at the time the statements were made; and (5) whether the child's statements were consistent. *Id.*

{¶23} In L.D.'s case, the social worker at Children's Hospital testified that the main purpose in conducting L.D.'s interview, as with any abuse-related interview, is to assess safety, both in a physical and psychological sense. The social worker asked L.D. open-ended questions, or questions designed to give L.D. a choice between two opposing answers. No leading or suggestive questioning occurred. Especially after L.D. revealed allegations of vaginal rape in the shower, the questions asked by the social worker were clearly asked to assess her medical safety, and L.D. underwent a physical examination after the interview. By the time of the interview, L.D. was eight years old, and she indicated to the social worker that she knew the difference between the truth and a lie. L.D. had no motive to lie about the sexual abuse from Bowers. In terms of consistency of L.D.'s statements, L.D. initially denied that inappropriate touching had occurred; however, L.D. quickly opened up to the social worker upon further questioning, and L.D.'s statements regarding the sexual abuse remained consistent over the next hour-plus interview.

{¶24} We determine that no error occurred in admitting L.D.'s Mayerson Center interview, because those statements were admissible under Evid.R. 803(4). We overrule Bowers's second assignment of error.

9

### Prosecutor's Remarks During Closing

{¶25} In his third assignment of error, Bowers argues that the trial court erred by permitting the prosecutor to comment on Bowers's state of mind with respect to his possible punishment for the crimes at issue. Bowers takes specific exception to the prosecutor's remarks that Bowers wanted to "unconfess" to the crimes, after learning the legal significance between rape and gross sexual imposition, and that Bowers remembered the details of the crimes—despite his testimony to the contrary—but that Bowers was being manipulative.

{¶26} The law affords a prosecutor a degree of latitude in closing argument when commenting on what the evidence has shown. *State v. Murrell*, 1st Dist. Hamilton No. C-020333, 2003-Ohio-2068, ¶ 23; *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). In determining whether prosecutorial misconduct has occurred, the first question is whether the remarks were improper, and, even if they were, the remarks must have "prejudicially affected substantial rights of the accused." *Lott* at 165. Thus, the alleged improper remarks must have deprived the accused of a fair trial in order for an appellate court to reverse a conviction for prosecutorial misconduct. *See State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999).

{¶27} In this case, the prosecutor's comments that Bowers wanted to "unconfess" to the rape charge, that Bowers remembered the details of the crime, and that he was manipulative, were a fair commentary on Bowers's credibility given the evidence presented at trial. *See State v. Tapke*, 1st Dist. Hamilton No. C-060494, 2007-Ohio-5124, ¶ 81. Bowers confessed to the Newtown police detective that he forced L.D. to perform oral sex on him, but, once in prison, Bowers told his ex-wife in

a letter that only the "masturbation" occurred. Bowers also told his ex-wife that if he were convicted of only the gross-sexual-imposition count, and not rape, he would only receive probation. A logical inference can be made from this evidence that Bowers thought better of admitting to the crimes once in prison, and after he had time to reflect on his possible punishment.

{¶28} Bowers also argues that the prosecutor improperly remarked about the difference in punishment between rape and gross sexual imposition, as reflected in Bowers's letters to Amber. In closing, the prosecutor began to re-read the following passage from Bowers's letter: "There's a guy in here, He had the same charge but more charges and a record. Anyways he got sentenced for 37 years. He had 8 charges, dropped all but 3. Charged him for two F1s and an F2. He got accused for raping his own 4 year old daughter." Bowers's counsel objected, and the trial court issued a cautionary instruction to the jury, informing them that punishment is not a factor in determining guilt or innocence. Given the trial court's instruction, we see no error. *See State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995) (a jury is presumed to follow a curative instruction).

{¶29} Furthermore, considering the totality of the evidence admitted against Bowers by the state at trial, we cannot say that, but for the allegedly improper remarks by the prosecutor, the outcome of the trial clearly would have been otherwise. *See Fears*, 86 Ohio St.3d 329 at 332, 715 N.E.2d 136. Therefore, Bowers has not shown that the prosecutor's remarks in closing prejudiced him. We overrule Bowers's third assignment of error.

*Ineffective Assistance of Counsel*

{¶30} In his fourth assignment of error, Bowers argues that he received ineffective assistance of counsel, because his counsel failed to object to: (1) Amber's testimony under the spousal privilege, (2) the introduction of L.D.'s Mayerson Center interview, and (3) the prosecutor's allegedly inappropriate statements during closing argument.

{¶31} Ineffective assistance of counsel requires a showing that counsel's performance fell below an objective standard of reasonableness, and that the defendant was prejudiced as a result of counsel's deficient performance. *State v. Combs*, 1st Dist. Hamilton No. C-120756, 2013-Ohio-3159, ¶ 24; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellate court will not second guess trial-strategy decisions made by counsel. *See State v. Adams*, 103 Ohio St.3d 508, 514, 2004-Ohio-5845, 817 N.E.2d 29.

{¶32} As we have determined, no error occurred with respect to the admission of Amber's testimony, because the spousal privilege did not exist at the time Bowers wrote her letters from jail. Moreover, no error occurred with respect to the introduction of L.D.'s Mayerson Center interview either, because it was admissible under Evid.R. 803(4). Finally, no error occurred with respect to the prosecutor's remarks in closing argument. Therefore, even if Bowers's counsel had objected, his objections would have been unsuccessful, and his decision not to object can be seen as trial strategy.

{¶33} We overrule Bowers's fourth assignment of error.

### Weight and Sufficiency of the Evidence

{¶34}  In his fifth assignment of error, Bowers argues that his convictions for rape and gross sexual imposition were supported by insufficient evidence, and were against the manifest weight of the evidence.  We disagree.

{¶35}  Given the level of detail in L.D's Mayerson Center interview describing the crimes, Amber's testimony as to the letters she received from Bowers, where he admitted to the gross-sexual-imposition charge, L.D.'s trial testimony reiterating that she had been abused by Bowers, and Bowers's confession, more than sufficient evidence existed to support his convictions.  *See State v. Jenks*, 61 Ohio St.3d 259, 612 N.E.2d 492 (1991).  As to manifest weight of the evidence, the jury was entitled to give little weight to Bowers's self-serving trial testimony in which Bowers claimed that he had lied to the Newtown police detective when he had confessed to oral sex with L.D.—especially where the pretrial letters Bowers sent to Amber from prison indicated that Bowers believed he would only receive probation for a gross-sexual-imposition conviction.  *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶36}  Therefore, we overrule Bowers's fifth assignment of error.

### Sentencing

{¶37}  In his sixth assignment of error, Bowers argues that the trial court improperly sentenced him on the rape offense as charged in Count 2 of the indictment to an indefinite prison term of 25 years to life in prison.  We agree.

{¶38}  Count 2 of the indictment charged rape of a child under R.C. 2907.02(A)(1)(b), and included specific language that the victim had been under the age of ten.  Moreover, the verdict form signed by the jury as to Count 2 included the

express finding by the jury that L.D. had been under the age of ten at the time of the offense. R.C. 2907.02(B) provides that "[n]otwithstanding sections 2929.11 to 2929.14 of the Revised Code, an offender under division (A)(1)(b) of this section shall be sentenced to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code." The statute also provides "[i]f the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, the court may impose upon the offender a term of life without parole." R.C. 2907.02(B).

{¶39} At the sentencing hearing, the trial court stated on the record as follows: "On the rape, Count 2, I'm imposing 25 years to life, pursuant to 2971.03(A)(c)(i)." When the defendant questioned his sentence, the trial court responded, "Mr. Bowers, the Court has no discretion on that sentence." It appears clear from the record that the trial court applied R.C. 2971.03(A). The specific subsection of R.C. 2971.03(A) that addresses a prison sentence of 25 years to life is (3)(d)(i).

{¶40} R.C. 2971.03(A)(3)(d)(i) provides that

> if the offense for which the sentence is being imposed is rape for which a term of life imprisonment is not imposed under division (A)(2) of this section or division (B) of section 2907.02 of the Revised Code, it shall impose an indefinite prison term as follows: [I]f the rape is committed on or after January 2, 2007, in violation of division (A)(1)(b) of section 2907.02 of the Revised

14

Code, it shall impose an indefinite prison term consisting of a minimum term of twenty-five years and a maximum term of life imprisonment.

{¶41} R.C. 2971.03(A) by its terms applies only to a person who was convicted of or pleaded guilty to a sexually-violent-predator specification that was included in the indictment. *See State v. Tschudy*, 9th Dist. Summit No. 24053, 2008-Ohio-473, ¶ 6. The state did not include a sexually-violent-predator specification in Bowers's indictment, thus, the trial court erred in applying R.C. 2971.03(A) to Bowers. *See State v. McMullen*, 9th Dist. Summit No. 26850, 2015-Ohio-1631 (where the appellate court determined that the trial court erred in applying R.C. 2971.03(A)(3)(d)(i) to a defendant when that defendant had not pleaded guilty to or been convicted of being a sexually-violent predator).

{¶42} In sum, the trial court was under the mistaken impression that it had no discretion in sentencing Bowers, and the trial court erred in applying R.C. 2971.03(A). As a result, we sustain Bowers's sixth assignment of error. On remand, the trial court must resentence Bowers in accordance with R.C. 2907.02(B).

### Conclusion

{¶43} In conclusion, we reverse the sentence imposed on the rape count and remand the matter to the trial court to resentence Bowers on the rape offense in Count 2 in accordance with R.C. 2907.02(B) and the law. The trial court's judgment is affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**HENDON** and **CUNNINGHAM, JJ.,** concur.

**Please note:**

**The court has recorded its own entry on the date of the release of this opinion.**